## Dubois *versus* Glaub.

1. An appearance having been entered in a case and it being at issue when called for trial, the appearance and plea were withdrawn. *Held,* that the court had power to give judgment for default of appearance.

2. Opening such judgment was in the discretion of the court, and the imposition of terms is not a subject of review by the Supreme Court.

3. Dams to create floods to carry down lumber, erected in a stream which is a public highway, are not for a purpose described in the "Mill-Dam Act," and are unlawful.

4. Where by reason of injury to rafts, the owner was delayed in getting them to the market, and lumber had depreciated before he could get them there; the depreciation was a proximate consequence of the wrong, and to be considered in estimating damages.

5. The damages were not to be estimated according to the depreciation at the distant market, but the price there was proper to be considered in determining the value of the lumber where it was injured.

6. Joint owners of a chattel should join in an action for injury to it, and the non-joinder can be taken advantage of only by plea in abatement.

[Dubois *v.* Glaub.]

ERROR to the Court of Common Pleas of *Elk county*.

This was an action on the case by John Glaub against John Dubois, David Tyler, Hiram Woodward and George Kistler, for injury to rafts of the plaintiff, under the circumstances hereafter stated.

Messrs. W. A. Wallace and McEnally had entered their appearance for defendants. When the case was called for trial, the defendants and their counsel were absent; after the jury was sworn, " Chapin appeared for defendants and withdrew appearance and plea;" judgment was taken by default, and afterwards liquidated under a writ of inquiry. Upon application of defendants, the judgment was opened on the terms that they pay the costs at the term when the judgment was taken by default, and of the writ of inquiry.

" Bennett's Branch" is by Act of Assembly a public highway. On this stream different persons, Dubois the defendant being one, had erected dams, called " bracket-dams," for the purpose of collecting the water and letting it off, to assist them in floating their rafts, when the natural rise of the stream was not sufficient. These lettings-off were called " splash floods."

The plaintiff had four rafts exclusively his own, moored in a mill-dam on the stream, and two rafts, which he owned jointly with another, moored in another place, all below Dubois's bracket-dam. From above these, the defendants, by a "splash" flood, drove down a quantity of logs, which in passing down covered the stream between its banks, jammed some of the rafts against the pier of the mill-dam, drove some on to the bank, broke the rafts, and otherwise injured them: some of the timber was lost, and the plaintiff was delayed in getting them to market during a natural flood which came on at that time. There was evidence that the plaintiff was at the place of the disaster with hands, but did not then assist in getting them off.

On the question of damages it appeared, that there was no definite value of rafts on Bennett's run, and that the nearest market was at Lock Haven on the Susquehanna; and there was evidence that the price of timber had fallen at Lock Haven before the next flood, on which the plaintiff could take his rafts to market.

Under the charge of the court (White, P. J.), the jury found for the plaintiff $475.

The defendants assigned for error, that the court erred:—

1. In ordering the defendants to pay the costs on opening the judgment by default.

2. In charging: " Even if it had been shown that the injury could not have occurred if the pier had not been there, this would not constitute a defence, as it is obvious that the jam was caused by the act of the defendants in driving logs by means of artificial

[Dubois *v.* Glaub.]

floods, an act which was wholly unauthorized and illegal. * * *
No legal right exists to create such floods, and he who undertakes
to use them without authority of law must be held responsible for
all injurious consequences resulting from their use. The court
regard as unanswerable these positions taken by the counsel of
plaintiff, ' that the injury of which plaintiff complains was caused
by loose logs driven down the stream in large masses by artificial
floods made by defendants, that the act of defendants in making
such floods was illegal, that they are consequently liable to plain-
tiff for all damages sustained by him resulting from such illegal
and unauthorized act, and that such damages are recoverable in
this action.' "

3. In charging : " In estimating the damages, the jury, should
they decide that plaintiff is entitled to recover, will take into
consideration the expense of re-rafting, and the value of the lum-
ber lost ; and if they are satisfied that the plaintiff could not by
the exercise of ordinary diligence have re-rafted and run his tim-
ber to market on the first flood, which came after the injury
occurred, they will also take into consideration the difference
between the value of the timber at the time the injury occurred,
and at the time when it was subsequently run to market and sold.
The evidence shows that timber had no fixed, definite market
value on Bennett's branch. It was regarded as worth there just
what it would sell for at Lock Haven, deducting the expenses of
its delivery. Plaintiff's rafts were not offered for sale, nor
intended to be sold where they were injured. If timber run
upon the first flood that season brought a higher price at Lock
Haven than timber run the second flood, and plaintiff was pre-
vented from getting his timber to market on the first flood by the
illegal act of the defendants, and thereby obtained a less price
for it, the loss ought to be charged to the defendants in the assess-
ment of damages in the suit, provided the delay of plaintiff in
getting his rafts to market was caused by the defendants, and was
not the consequence in whole or in part of plaintiff's own acts or
negligence."

4. In charging : " Two of the rafts were shown to be the joint
property of plaintiff and Anthony Kuntz, and we are asked to
instruct you, that plaintiff cannot recover in this suit for the
injury done to these, that no attention is to be given to any but
those which were the sole property of plaintiff. * * * * In
order to exclude these from the consideration of the jury, the
defendants ought to have pleaded the joint ownership in abate-
ment. The evidence to prove that plaintiff was not the sole
owner of these rafts was introduced without objection, and was
admissible for the purpose of showing the extent of plaintiff's
injury so far as these were concerned ; for being a joint owner
with another, he ought not to recover more than one-half of the

[Dubois *v.* Glaub.]

damages sustained by the joint property. If entitled to recover, therefore, the plaintiff should be allowed full damages for the injury done to his sole property, and one-half of the damages for the injury done to the joint property."

\*      \*      \*      \*      \*      \*

6. In not answering in the affirmative defendants' 6th point, to wit: " In estimating damages the value of the property before and after the injury is be considered at the place where it lay, and not what it would have been after a safe transportation to market."

*J. B. McEnally,* for plaintiff in error.—1. The judgment by default was without authority of law, and defendants had a right to have it opened : Michew *v.* McCoy, 3 W. & S. 502.

2. Raising water in the stream is not unlawful as against a navigator. There is no contest with a riparian owner. Here the riparian owner had obstructed the navigation by his own erection. The Act of 22d March 1818, 7 Sm. L. 116, making Bennett's Branch a public highway, makes it subject to the Mill-Dam Act of March 23d 1803, 4 Sm. L. 20, which authorizes riparian owners to erect mill-dams, &c., provided that they do not obstruct the navigation, &c.: Coovert *v.* O'Connor, 8 Watts 476.

3. By the rule for assessing damages laid down by the court the jury would be allowed to consider remote and speculative damages, and not be confined to those which were proximate and actual. Such a rule is improper: 1 Chitty Pl. 395, 396 ; Greenl. on Ev., § 256 ; Forsyth *v.* Palmer, 2 Harris 97 ; Fleming *v.* Beck, 12 Wright 312 ; Fessler *v.* Love, Id. 410 ; Sedgwick on Damages 78.

4. The plaintiff counts on six rafts as all his own property, and cannot recover therefore on those owned jointly with another: Stephen on Pl. 316.

*R. Brown* and *Souther & Willis,* for defendant in error.—The application to open the judgment was to the discretion of the court, who therefore had the right to impose terms in granting it.

The " Mill-Dam Act" is for the erection of dams to propel machinery, not to make artificial floods: Commonwealth *v.* Church, 1 Barr 105. No one has a right to the exclusive use of a highway : Dalrymple *v.* Mead, 1 Grant 197. The rule as to damages laid down by the court is the true one : Sedgwick on Damages 79 ; White *v.* Mosely, 8 Pick. 356 ; 2 Greenl. on Ev., § 268. Loss of profits may be compensated when it is the direct result of act complained of: Adams' Express Co. *v.* Egbert, 12 Casey 360.

The non-joinder of the other owner of the raft should have been pleaded in abatement: Agnew *v.* Johnson, 5 Harris 378 ; 2 Saund. Pl. & Ev. 1164 ; 2 Tr. & Haly's Pr. 123.

2 P. F. SMITH—16

[Dubois *v.* Glaub.]

The opinion of the court was delivered, May 15th 1866, by

STRONG, J.—Were we of opinion that the court below erred in imposing terms upon the defendants, when opening the judgment given by default, it would not affect the judgment finally rendered. The defendants accepted the terms offered, pleaded to issue, and went on to trial. If Mr. Chapin withdrew their former appearance and plea without authority, they may possibly have recourse to him. To us the withdrawal of the appearance and plea appears to have been a device to postpone a trial. However that may have been after the appearance was withdrawn, the record stood as if none had ever been entered, and we are not prepared to say the court had then no power to give judgment for default of appearance, the declaration having been filed nearly three years previously. Our Act of Assembly of June 13th 1836, does authorize judgment for default of appearance in personal actions, and the case of Michew *v.* McCoy, 3 W. & S. 502, relied upon by the defendants, has no bearing on this case. That was an action of ejectment, the statutory provisions in regard to which are unlike those enacted for personal actions. If, then, the court had power to order a judgment for default of appearance, opening it was subject to their discretion exclusively, and the defendants cannot be heard here complaining of the terms imposed, especially after they accepted them. The second assignment of error presents the question, whether the defendants were liable to the plaintiff for injuries sustained by him, in consequence of their having raised the creek by an artificial flood. "Bennett's Branch of the Sinnemahoning" is a public highway, declared such by law. The defendants, therefore, had no right to interfere with the natural flow of the water, except so far as they were licensed by the Mill-Dam Act of March 23d 1803. They were not authorized to build dams for any other purposes than those described in that act. A dam to provide for a "splash" flood is illegal, and of course its consequences are illegal. To hold that the builder of such a dam might at his pleasure open it, and precipitate a flood into the creek below, sweeping away and destroying the property of *infra riprarian* owners or navigators on the stream, without responsibility, would be extraordinary. Even for the purpose of floating logs, the owners of such a dam have but a common right of navigation. They must so use the stream as not to exclude other navigators. They may not therefore by artificial means send their logs down the current in such a mass as to render navigation by others impossible, or to make the destruction of other rafts than their own certain. We think, therefore, the charge of the court, to which exception has been taken in this assignment, was entirely correct. The third and sixth assignments relate to the instruction given respecting the assessment of damages. In this we perceive no error. The

[Dubois *v.* Glaub.]

court did not instruct the jury that the damages arising from depreciation in the price of lumber should be estimated according to the price at Lock Haven. The whole that was said upon this subject must be considered. It is plain from the evidence there was no market on the creek where the plaintiff's logs were. They were rafted and prepared for transportation to a market, and Lock Haven was the nearest. The price at Lock Haven was necessarily some guide to a determination of the value on the creek. And if the fact was that the plaintiff was unable to run his logs to market, in consequence of the illegal acts of the defendants, until after the price of lumber had fallen, the injury he sustained in this particular was a proximate consequence of the wrong, and proper to be considered in estimating the damages.

The remaining assignments raise the question, whether · the plaintiff could recover for the injury done to two of the rafts, which were not his sole property, but which he owned jointly with Anthony Kuntz. This is settled by the following cases: Addison *v.* Overend, 6 T. R. 766; Sedgworth *v.* Overend, 7 Id. 279; Wheelwright *v.* Depeyster, 1 Johns. 471; Agnew *v.* Johnston, 5 Harris 378. These cases assert the doctrine, that though joint-owners of chattels should join in actions for injuries to the chattels, yet if one sue alone the defendant can take advantage of the nonjoinder only by plea in abatement, and that if he does not thus plead the plaintiff may recover for the injury to his interest. This seems to be anomalous, but it is sustained by the cases cited.

The judgment is affirmed.